IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHIELA PETERSON,<br>Plaintiff,<br>v.<br>CAROLYN WHITE, et al.,<br>Defendants. | **MEMORANDUM DECISION AND ORDER DISMISSING CASE**<br>Case No. 2:25-cv-00878<br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Before the court are Motions for Leave to Proceed in forma pauperis (IFP) (ECF No. 2), for a Preliminary Injunction (ECF No. 20), for a Temporary Restraining Order (ECF No. 23), for Leave to File various supplemental exhibits (ECF Nos. 25, 26, & 28), and to Vacate State Court Conviction (ECF No. 31) filed by Plaintiff Shiela Peterson.[1] Because the court finds that Ms. Peterson has failed to state a claim or otherwise plead claims over which this court has jurisdiction, the court denies the pending motions and dismisses this action.

**BACKGROUND**

Ms. Peterson filed her original Complaint in this pro se action on October 1, 2025, against Defendants Carolyn White, Douglas White, and Beehive Storage dba Storage City (Beehive Storage). (See Compl., ECF No. 1.) Because Ms. Peterson filed an IFP motion to

[1] The docket in Ms. Peterson's state criminal case, State v. Peterson, No. 231500280 (4th Jud. Dist. Utah), reflects that Ms. Peterson spells her name as Shiela and Sheila. She also uses the following names: Sheila Rundle, Sheila Blankenship, Sheila Colwell, Sheila Frantz, Sheila Olwell, and Sheila Petty. Ms. Peterson previously pleaded guilty in federal court to one count of Unlawful Production of an Identification Document. United States v. Frantz, No. 2:15-cr-40 (D. Utah).

proceed without paying the filing fee, the Honorable Daphne A. Oberg screened the Complaint and found that Ms. Peterson failed to state any federal causes of action. (Mem. Decision & Order, ECF No. 7.) Specifically, Judge Oberg held that Ms. Peterson had not stated plausible claims for discrimination or retaliation under Title VII of the Civil Rights Act of 1964, and that Ms. Peterson did not state any other plausible federal claims for relief. (Id. at 6–10.) Judge Oberg permitted Ms. Peterson to file an amended complaint. (Id. at 11.)

Ms. Peterson then made five requests for an extension of time to comply with the court's directive. (ECF Nos. 8, 10, 12, 14, 17.) Judge Oberg eventually ordered that the court would not grant additional extensions (Dkt. Text Order, ECF No. 18), after which Ms. Peterson filed a sprawling, 64-page Amended Complaint on June 22, 2026. (ECF No. 19.) In addition to restating her claims against the original Defendants, Ms. Peterson also asserted claims against Kelly White, Victoria White, Alexandra White, the Honorable Jennifer Brown Mabey, Erwin Petilos, Officer Lenny Newby, and the State of Utah. (See id. at 2–3.) The main thrust of her allegations is that she has been prosecuted unlawfully, and she asks the federal court to enjoin an ongoing state criminal proceeding. On the same day she filed her Amended Complaint, Ms. Peterson filed a Motion for Preliminary Injunction in which she asserted that the state was prosecuting her in bad faith and that Younger abstention should not apply. (ECF No. 20.)

According to the allegations in the Amended Complaint, Ms. Peterson worked for the White family's Beehive Storage business as a live-in property manager of 650 self-storage units. (See Am. Compl. ¶¶ 18–19.) A three-year employment contract governed Ms. Peterson's employment, beginning on November 1, 2022. (See id. ¶ 18.) Ms. Peterson alleges that she was fired on September 27, 2023, and evicted for refusing to participate in the scheme of financial fraud that the White family committed against their own customers. (Id. ¶¶ 18–21, 38.) In

addition to these employment consequences, Ms. Peterson also asserts that the White family initiated a false and retaliatory criminal prosecution against her. (Id. ¶¶ 21–23.) Specifically, she asserts that at Carolyn White's behest, the White family filed a false police report that led to Ms. Peterson's arrest. (Id. ¶ 21.)

According to Ms. Peterson, Office Newby knew that these accusations were false and nonetheless used them as the basis for his probable cause statement as part of a conspiracy with the White family. (Id. ¶ 69.) And Ms. Peterson claims that while she was held in jail, the White family stole everything from her personal storage unit. (Id. ¶ 21.)

Ms. Peterson also alleges misconduct by Judge Mabey and the prosecution throughout the course of her criminal proceedings. Specifically, Ms. Peterson claims that Judge Mabey communicated with Kelly White ex parte, unfairly struck a hearing, and kept Ms. Peterson's trial on the calendar even after Carolyn White rescinded her probable cause statement. (Id. ¶ 70.) And Ms. Peterson claims that the prosecution withheld exculpatory evidence, including text messages, business records, payment records, and accounting records, for 567 days and failed to respond to her constitutional challenge for 7 months. (See id. ¶¶ 59–61, 104.)

At a trial that began on July 6, 2026, a jury found Ms. Peterson guilty of six charges of forgery and one charge of theft. (Verdict Form, Dkt. No. 184 in No. 231500280.)

**LEGAL STANDARD**

28 U.S.C. § 1915 governs a plaintiff's request to proceed IFP. The court must dismiss an action filed by an IFP plaintiff if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Id. § 1915(e)(2)(B). Although the court need not screen a plaintiff's complaint before granting an IFP motion, the Tenth Circuit has encouraged

district courts to screen IFP cases as soon as practicable. See Buchheit v. Green, 705 F.3d 1157, 1160–61 (10th Cir. 2012) (noting that prompt screening of IFP cases is a "good practice"). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

When assessing a complaint for failure to state a claim upon which relief may be granted, the court takes all well-pleaded factual assertions as true and regards them in a light most favorable to the plaintiff. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). But the factual allegations in a complaint must raise a plausible right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And while the court accepts well-pleaded factual allegations as true at this stage, the court considers "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional … claim" as "conclusory and not entitled to" an assumption of truth. Id. at 681 (quoting Twombly, 550 U.S. at 554–55).

Because Ms. Peterson proceeds pro se, the court construes her pleadings "liberally" and holds her "to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). But "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Id.

## ANALYSIS

As a preliminary matter, the court notes that Ms. Peterson's primary purpose in filing her

Amended Complaint appears to be the obstruction of her state court criminal proceedings. She filed her Amended Complaint in this action shortly before she filed an emergency motion in her criminal case on July 1, 2026, asking the state court to continue her trial on the ground that she had discovered inconsistencies in certain invoices. (Dkt. No. 158 in No. 231500280.)[2] Ms. Peterson then filed another emergency motion on July 9, 2026, evidently while trial was ongoing, asking the state court to stay criminal proceedings pending the "complete judicial adjudication of her parallel federal civil rights action in the United States District Court for the District of Utah[.]" (Dkt. No. 179 at 12 in No. 231500280.)

These circumstances suggest that Ms. Peterson filed her Amended Complaint to stymie the state court proceedings. Under the IFP screening statute, the court must dismiss an action if the court determines that the action is "malicious." 28 U.S.C. § 1915(e)(2)(B)(i). But the "standard for maliciousness is not … well established[,]" Abraham v. Danberg, 699 F. Supp. 2d 686, 688 (D. Del. 2010) (citation omitted), and, although the court is skeptical that Ms. Peterson brings this suit for a proper purpose, it is unclear whether these circumstances rise to the level of maliciousness. The court will therefore consider whether Ms. Peterson has properly stated a claim for any of the twelve causes of action that she asserts against the Defendants. The court finds that she has not.

## I. Federal Claims Related to Ms. Peterson's Ongoing Criminal Prosecution

The bulk of Ms. Peterson's Amended Complaint relates to her ongoing criminal prosecution. But under Younger v. Harris, 401 U.S. 37 (1971), the court has no jurisdiction to enjoin the state court proceedings. And for a variety of additional reasons, the court finds that

[2] The Utah state court promptly denied that motion, noting that Ms. Peterson had been in possession of the relevant documents for over a year. (Dkt. No. 162 in No. 231500280.)

Ms. Peterson fails to state a claim for damages under either 42 U.S.C. § 1983 or any other civil rights statute.

**A. Younger abstention prevents the court from interfering with an ongoing state criminal prosecution.**

Under the Supreme Court's decision in Younger, "federal courts should not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when a state forum provides an adequate avenue for relief." Weitzel v. Div. of Occupational & Pro. Licensing of Dept. of Com., 240 F.3d 871, 875 (10th Cir. 2001) (citation modified). As the Tenth Circuit has stated:

> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

Amanatullah v. State Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997)). The Supreme Court has further clarified that Younger abstention applies to three categories of state proceedings: 1) state criminal prosecutions; 2) certain "civil enforcement proceedings"; and 3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 367–68 (1989)).

"When Younger's three requirements are met, abstention is mandatory unless one of three exceptions applies: the prosecution was '(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such

extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate.'" Winn v. Cook, 945 F.3d 1253, 1258–59 (10th Cir. 2019) (quoting Phelps v. Hamilton, 59 F.3d 1058, 1063–64 (10th Cir. 1995)).

Ms. Peterson contends that this matter is exempt from Younger abstention because of bad faith prosecution, harassment, unconstitutional statutes and proceedings, irreparable injury, and the lack of an adequate state remedy. (See Am. Compl. ¶ 139.) The court is unpersuaded. First, Ms. Peterson does not allege the requisite level of irreparable harm. The "burden of defending a criminal prosecution is, of course, insufficient without more to constitute irreparable harm." Winn, 945 F.3d at 1260 (quoting Palmer v. City Of Chicago, 755 F.2d 560, 575–76 (7th Cir. 1985)). Indeed, the "'threat to the plaintiff's federal protected rights' is only irreparable if it 'cannot be eliminated by … defense against a single prosecution.'" Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997) (quoting Younger, 401 U.S. at 46). Here, Ms. Peterson faces a single prosecution and therefore cannot show irreparable injury. Her remedy against injury is the successful defense of the claims against her or an appeal of any adverse ruling using the mechanisms available in the state court system.

Moreover, the court finds no evidence of bad faith prosecution or unconstitutional process. Courts consider three factors when determining whether a prosecution is commenced in bad faith or to harass: "1) whether it was frivolous or undertaken with no reasonably objective hope of success; 2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and 3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." Id. A plaintiff bears a "'heavy burden' to overcome the bar of Younger abstention by setting forth more than mere allegations of bad

faith or harassment." Id. (quoting Phelps v. Hamilton, 59 F.3d 1058, 1066 (10th Cir. 1995)). Here, there was a single prosecution against Ms. Peterson and no evidence that the prosecution was motivated by Ms. Peterson's membership in a suspect class or for her exercise of constitutional rights. Although Ms. Peterson claims that the Defendants retaliated against her for exposing Ms. White's unlawful actions, that kind of whistleblowing is not constitutionally protected. And whether Ms. Peterson did, in fact, expose any unlawful actions is a question of credibility that the state court jury must decide. Moreover, the record does not reflect that Ms. Peterson's prosecution was undertaken without a reasonably objective hope of success, given that the jury disbelieved Ms. Peterson's version of events and convicted her of seven charges.

The court must therefore abstain under Younger and dismisses Ms. Peterson's claims asking the court to enjoin her state court proceedings without prejudice. See Goings v. Sumner Cnty. Dist. Attorney's Off., 571 F. App'x 634, 639 (10th Cir. 2014) ("Under our precedent, Younger-abstention dismissals have been treated as roughly akin to jurisdictional dismissals and, accordingly, have been considered to be without prejudice." (citation omitted)).

### B. Ms. Peterson does not adequately allege claims for damages under 42 U.S.C. § 1983.

"Section 1983 provides a cause of action against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,]' deprives someone of a federal constitutional or statutory right." Martinez v. City of Aurora, Colo., 174 F.4th 745, 754 (10th Cir. 2026) (quoting 42 U.S.C. § 1983).

Ms. Peterson brings several causes of action under § 1983: 1) a general claim against all Defendants arguing violations of due process, equal protection, the right to a fair and impartial tribunal, and the right to equal protection of the laws (Am. Compl. ¶¶ 66–72); 2) a Fourth Amendment claim against Officer Newby, arguing that Officer Newby conducted an

unreasonable seizure by knowingly submitting a false probable cause statement (id. ¶¶ 105–07); 3) a Fourth Amendment claim for unlawful detention against all Defendants arguing that the Defendants purposefully coordinated Ms. Peterson's arrest so that she could not interfere with the White family's theft of the contents of her personal storage unit at Beehive Storage (id. ¶ 131); 4) a claim for malicious prosecution against Carolyn White, Officer Newby, Mr. Pentilos, and Judge Mabey alleging that Officer Newby initiated the prosecution without probable cause on the basis of false statements from Carolyn White (id. ¶¶ 93–98); and 5) due process claims against Mr. Petilos and the State of Utah for violations of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), arguing that the prosecution withheld exculpatory evidence and failed to respond in a timely manner to Ms. Peterson's notice of a constitutional challenge (id. 99–104).

The court must similarly abstain from hearing these claims under the Younger doctrine, which "extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004) (citation omitted). Were the court to hold that Ms. Peterson's constitutional rights had been violated, this finding would have a preclusive effect on proceedings in the state court. Accordingly, Younger abstention is appropriate.

Where the Younger factors are met, a court should generally stay federal proceedings on the damage claims rather than dismiss them outright. Buck v. Myers, 244 F. App'x 193, 198 (10th Cir. 2007). But here, because Ms. Peterson has already been convicted (although her criminal proceedings are ongoing, as she has yet to be sentenced), the court must dismiss her claims under Heck v. Humphrey, 512 U.S. 477 (1994).

"In Heck, the Supreme Court explained that a § 1983 action that would impugn the

validity of a plaintiff's [incarceration] cannot be maintained unless the [basis for incarceration] has been reversed on direct appeal or impaired by collateral proceedings." Nichols v. Baer, 315 F. App'x 738, 739 (10th Cir. 2009) (citing Heck, 512 U.S. at 486–87). Heck keeps litigants "from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." Butler v. Compton, 482 F.3d 1277, 1279 (10th Cir. 2007) (citation omitted). Heck clarifies that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. at 486. If the court were to conclude that Ms. Peterson's constitutional rights had been violated in a prejudicial manner, the court would be stating that her conviction was not valid. Accordingly, Ms. Peterson's claims "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. Because Ms. Peterson has not yet overturned her conviction on direct appeal or collateral review, the court dismisses her claims without prejudice. See Bryner v. Utah, 429 F. App'x 739, 744 (10th Cir. 2011) ("When a § 1983 claim is dismissed under Heck, the dismissal should be without prejudice.").

Moreover, the court must dismiss the claims against Judge Mabey, Mr. Petilos, and the State of Utah because these parties are immune from suit. For instance, Judge Mabey is protected by judicial immunity. "A judge acting in his or her judicial capacity is immune from suit 'unless the judge acts clearly without any colorable claim of jurisdiction.'" Majersky v. City & Cnty. of Denver, No. 25-1200, 2026 WL 161381, at *3 (10th Cir. Jan. 21, 2026) (quoting Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990)). And "[j]udicial immunity 'is not overcome by allegations of bad faith or malice.'" Id. (quoting Mireles v. Waco, 502 U.S. 9, 11 (1991)). Ms. Peterson's claims against Judge Mabey concern actions that were taken within the

judge's judicial capacity, and the court therefore dismisses the claims against Judge Mabey with prejudice. See id. (affirming dismissal with prejudice of the claims against judicial defendants on the grounds of absolute immunity).[3]

Similarly, Mr. Petilos is protected by prosecutorial immunity. Under this doctrine, "[i]t is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process, such as initiating and pursuing criminal prosecutions." Id. (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991)). Mr. Petilos is accordingly immune from Ms. Peterson's claim that he violated her due process rights, and the court dismisses the claims against him with prejudice. See id. (affirming dismissal with prejudice of the claims against a prosecutor on the grounds of absolute immunity).

Finally, the State of Utah is protected by sovereign immunity. "The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity." Hendrickson v. AFSCME Council 18, 992 F.3d 950, 965 (10th Cir. 2021). Under the Eleventh Amendment, "[t]he [j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by [c]itizens of another [s]tate, or by [c]itizens or [s]ubjects of any [f]oreign [s]tate." U.S. Const. amend. XI. "This immunity extends as well 'to suits brought by citizens against their own state.'" Free Speech Coal., Inc. v.

[3] In any event, Ms. Peterson's assertion that Judge Mabey engaged in an unlawful ex parte communication with Kelly White is frivolous and lacks a legal basis. The offending email, which was sent from Kelly White's paralegal to Judge Mabey's judicial assistant, simply informed the court that there was no need for an immediate occupancy hearing in the eviction action against Ms. Peterson because "the tenants have left the residence …." (Exhibits, ECF No. 19-5 at 4.) It was perfectly reasonable for Judge Mabey to strike the unnecessary hearing and lodge the email correspondence on the docket to provide a record of why the hearing was struck. Ms. Peterson's suggestion that she would have proved her innocence at an eviction hearing is not plausible. The State of Utah had already filed an information against Ms. Peterson and Ms. Peterson was required to make any arguments about her innocence in the criminal proceeding, not the eviction action.

Anderson, 119 F.4th 732, 736 (10th Cir. 2024) (quoting Hendrickson, 992 F.3d at 965). The court therefore dismisses the claims against the State of Utah without prejudice on the ground of Eleventh Amendment immunity. See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. Guthrie, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds … must be without prejudice.").

**C. Ms. Peterson does not adequately allege conspiracy under 42 U.S.C. § 1985(3) or neglect to prevent conspiracy under 42 U.S.C. § 1986.**

"A § 1985(3) claim requires a party show: '(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.'" Vanhorn v. Salvation Army, No. 24-3126, 2026 WL 1257804, at *4 (10th Cir. May 7, 2026) (quoting Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993)). "This type of civil rights claim applies specifically 'to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Id. (quoting Tilton, 6 F.3d at 686.) Ms. Peterson does not allege facts indicating a racial or class-based motivation for the conspiracy. Accordingly, she fails to state a claim under 42 U.S.C § 1985(3).

A "§ 1986 claim is dependent upon the existence of a valid claim under § 1985." Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985) (citations omitted). Since Ms. Peterson does not adequately allege a conspiracy under 42 U.S.C. § 1985(3), her claim for neglect to prevent that conspiracy under 42 U.S.C. § 1986 necessarily fails.

Furthermore, these claims must be dismissed because they also implicate the Heck bar discussed above: a favorable ruling would imply that Ms. Peterson's underlying conviction was invalid. The court therefore dismisses these claims without prejudice. See Bryner, 429 F. App'x at 744.

## II. Federal Claims Related to Ms. Peterson's Employment

Ms. Peterson brings claims for retaliation under Title VII and a violation of the Fair Labor Standards Act. For the reasons set forth below, the court dismisses both claims.

### A. Ms. Peterson does not adequately allege retaliation under Title VII.

"Title VII forbids employers from retaliating against employees for opposing any activity that is unlawful under Title VII." Battino v. Redi-Carpet Sales of Utah, LLC, No. 20-4081, 2021 WL 4144974, at *4 (10th Cir. Sept. 13, 2021) (quoting Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 890 (10th Cir. 2018)); see also 42 U.S.C. § 2000e-3(a). "To state a prima facie case of retaliation, [Ms. Peterson] must demonstrate that (1) she engaged in protected opposition to discrimination; (2) [her employer] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." Fassbender, 890 F.3d at 890 (quoting Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004)) (citation modified). "To show she engaged in protected activity, [Ms. Peterson] doesn't need to show that she reported an actual Title VII violation; rather, she must only show 'a reasonable good-faith belief that' she was opposing discrimination." Id. (quoting Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015–16 (10th Cir. 2004)).

Judge Oberg previously dismissed Ms. Peterson's retaliation claim after providing a comprehensive analysis of why Ms. Peterson failed to allege the first and third elements of retaliation:

> [Ms. Peterson] does not assert facts showing she engaged in protected activity. For instance, nothing suggests Ms. Peterson opposed conduct she believed to be unlawful under Title VII. Nor does she allege participation in any Title VII proceeding. Similarly, there are no facts suggesting Ms. Peterson's termination closely followed a protected activity. Instead, Ms. Peterson's termination was apparently part of a scheme to seize and sell her property. Accordingly, … Ms.

Peterson fails to state a plausible claim for retaliation under Title VII.

(ECF No. 7 at 9.)

Ms. Peterson's Amended Complaint does not grapple with any of these failures and does nothing to cure the defects noted by Judge Oberg. Ms. Peterson argues only that she "engaged in protected activity under Title VII by refusing to participate in Defendants' scheme to falsify customer payment records … and [by] opposing Defendants' unlawful and fraudulent business practices." (Am. Compl. ¶ 84.) Accordingly, for the reasons previously stated by Judge Oberg, the court dismisses Ms. Peterson's claim for retaliation. And given Ms. Peterson's failure to correct any of the deficiencies that Judge Oberg identified, the court finds that it would be futile to provide Ms. Peterson further opportunities to allege this claim and dismisses her Title VII claim with prejudice. See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citation omitted)).

**B. Ms. Peterson brings her claim for a violation of the Fair Labor Standards Act (FLSA) outside of the statute of limitations.**

"[T]he FLSA requires an employer to pay a minimum wage for each hour it 'employ[s]' an employee, as well as an overtime premium for hours in excess of forty per week." Pabst v. Oklahoma Gas & Elec. Co., 228 F.3d 1128, 1132 (10th Cir. 2000) (citing 29 U.S.C. §§ 206, 207, 213). "Whether waiting time is time worked under the [FLSA] depends upon particular circumstances." Barnes v. Omnicell, No. 23-1336, 2024 WL 2744761, at *6 (10th Cir. May 28, 2024) (quoting 29 C.F.R. § 785.14). Indeed, courts must consider "the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances." Id. (quoting Boehm v. Kansas City Power & Light Co., 868 F.2d 1182, 1185 (10th Cir. 1989)). The "ultimate question" in this

analysis is often "whether an employee is engaged to wait or waiting to be engaged." Id. (quoting Pabst, 228 F.3d at 1132) (citation modified). And "[o]n-call time is compensable if the employee is required to remain on the employer's premises or if the employee's time away from the employer's premises is so restricted that it interferes with personal pursuits." Id. (citing 29 C.F.R. § 785.17.)

"The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies." Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1270 (10th Cir. 2011) (citing 29 U.S.C. § 255(a)). "To fall under the three-year limitation, the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'" Id. (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).

Ms. Peterson alleges that in her work as a live-in property manager, her employer required her to "be available and responsive at all hours far exceeding the standard 40-hour work week." (Am. Compl. ¶ 90.) She argues that by failing to appropriately compensate her for all hours worked, including overtime, her employer violated the FLSA. 29 U.S.C. § 201, et seq. But Ms. Peterson fails to provide any details about how many hours she worked, the nature and extent of any restrictions, and the relationship between the services rendered and the on-call time. Moreover, Ms. Peterson does not allege that her employer knowingly or recklessly violated the FLSA, so a two-year statute of limitations applies to her claim. Ms. Peterson was fired on September 27, 2023, and did not file this case until October 1, 2025. (See Compl.; Am Compl. ¶ 38.) Because Ms. Peterson failed to bring this claim within the two-year statute of limitations, and fails to allege this claim with sufficient particularity, the court dismisses Ms.

Peterson's claim for a violation of the FLSA.

Whether this claim should be dismissed with or without prejudice presents a more challenging question. The court notes that there is little guidance about how often a plaintiff proceeding IFP should be allowed to amend a complaint, especially where a plaintiff raises new claims in an amended complaint that were not included in the original complaint. "The court cannot take on the responsibility of constructing plaintiff's arguments and searching the record." Phillips v. Layden, 434 F. App'x 774, 776 (10th Cir. 2011) (citing Hall, 935 F.2d at 1110). But generally, the court should dismiss a complaint under 28 U.S.C. § 1915(e)(2) "only where it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend." Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1997) (citation omitted). And the Tenth Circuit has indicated that courts must allow an IFP plaintiff at least one opportunity to amend a complaint, even where it is indisputable that the complaint fails to state a claim. See Shapiro v. Campanelli, No. 25-5183, 2026 WL 1970556, at *1 (10th Cir. July 8, 2026) (remanding to the district court to provide IFP plaintiff an opportunity to amend even though the district court dismissed without prejudice and the original complaint stated only that "[u]pon information and belief, Defendant conspired with others, which violated Fourteenth Amendment Rights[,]" demanded $1 million, and provided a Rule 11 certification).

Had Ms. Peterson raised her FLSA claim in her original complaint, the court would likely have provided her at least one opportunity to replead that claim. But the authorities cited above do not suggest that IFP plaintiffs should be provided leave to add new claims to complaints indefinitely.

In a case considering the dismissal of a complaint for frivolousness under the former

version of 28 U.S.C. § 1915, the Supreme Court noted:

> Because a § 1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the in forma pauperis statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations. It could, however, have a res judicata effect on frivolousness determinations for future in forma pauperis petitions.

Denton v. Hernandez, 504 U.S. 25, 34 (1992). It is unclear whether this reasoning extends to the current version of the IFP statute, which now instructs courts that they "shall dismiss the case at any time if the court determines that … the action or appeal … fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2). After all, the Tenth Circuit reviews the dismissal of an IFP complaint for failure to state a claim de novo, rather than for abuse of discretion. Phillips, 434 F. App'x at 775. But the Supreme Court's reasoning suggests that not every dismissal of an IFP complaint for failure to state a claim should be evaluated as a dismissal on the merits. Instead, it may be appropriate in some instances for a court to dismiss a complaint for failure to comply with the IFP requirements, but without prejudice to the filing of a paid complaint.[4]

The court finds that this outcome is appropriate here. Ms. Peterson presents no facts in her lengthy complaint indicating that she was required to work overtime hours without pay. Moreover, it appears from the timing of the original Complaint and the Amended Complaint that

[4] When a court screens an IFP complaint for failure to state a claim, it must consider several important interests, which can be a difficult balancing act given that this screening generally occurs before any defendants have appeared in the case and the court therefore does not have the benefit of adversarial briefing. The court must avoid becoming an advocate for the defendants by dismissing an IFP complaint prematurely. But by providing too much guidance and too many opportunities to amend, the court risks becoming an advocate for the plaintiff. The proper role that the court plays when evaluating an IFP complaint has become especially important given the rise of generative AI. As complaints become longer, with more causes of action that implicate sometimes complex areas of law, the IFP screening process places increasing demands on court resources.

Ms. Peterson has alleged her claims against Beehive Storage and the Whites because they provided evidence against Ms. Peterson in her criminal proceedings. Most importantly, the court is concerned that Ms. Peterson is improperly using this federal action in an attempt to delay her state court proceedings. The court therefore finds that further amendment is not in the interests of justice. See Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (holding that a court may disallow further amendment "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment" (citation omitted)).

But the Tenth Circuit has stressed that "denial of leave to amend and dismissal with prejudice are two separate concepts." Brereton, 434 F.3d at 1216 (citation omitted). One instance where these two concepts may diverge is where an IFP plaintiff attempts to add new but poorly presented claims in an amended complaint. While Ms. Peterson has not demonstrated that she should be allowed to prolong this matter without paying a filing fee, the court will dismiss her FLSA claim without prejudice. If Ms. Peterson believes she has a good faith basis for this claim, she may file a paid complaint, serve the Defendants, and proceed with her claim under the Federal Rules of Civil Procedure.[5]

### III. Claims under State Law

After dismissing all claims over which it has original jurisdiction, a district court may decline to exercise supplemental jurisdiction over remaining claims. 28 U.S.C. § 1367(c)(3). Indeed, the Tenth Circuit has urged that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Smith

[5] Ms. Peterson should be aware, however, that she may be subject to Rule 11 sanctions should a court determine that she has filed a case to harass the Defendants. See Fed. R. Civ. P. 11(c).

v. City of Enid By & Through Enid City Comm'n, 149 F.3d 1151 (10th Cir. 1998) (citations omitted). In light of the court's dismissal of all of Ms. Peterson's federal claims, the court also dismisses her claims under state law for breach of employment contract, wrongful conversion of property, and intentional infliction of emotional distress.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. The Plaintiff's Motions to Proceed IFP (ECF No. 2), for a Preliminary Injunction (ECF No. 20), for a Temporary Restraining Order (ECF No. 23), for Leave to File various supplemental exhibits (ECF Nos. 25, 26, & 28), and to Vacate State Court Conviction (ECF No. 31) are DENIED.

2. The Plaintiff's claims against the Honorable Jennifer Brown Mabey and Erwin Petilos are dismissed WITH PREJUDICE under the doctrine of absolute immunity.

3. The Plaintiff's claim for retaliation under Title VII is dismissed WITH PREJUDICE for failure to state a claim.

4. The Plaintiff's remaining claims are dismissed WITHOUT PREJUDICE for lack of subject matter jurisdiction and for failure to state a claim.

DATED this 19th day of August, 2026.

BY THE COURT:

Tena Campbell
United States District Judge